We'll now proceed to the next matter on the calendar. That's Amaker v. Schiraldi et al. Mr. Youngwood, you may proceed. Thank you, Your Honor. May it please the Court, Jonathan Youngwood Simpson Thatcher and Bartlett v. Anthony Amaker as plaintiff and appellant. Mr. Amaker filed a complaint with a number of claims but remains before this Court today is the 1983 claim in which Mr. Amaker's pro se complaint pleads with great detail how for years he was thwarted by both the State and the City in his efforts to have his parole file accurately convey his criminal history. The parole file that was presented to five separate parole boards over a series of years contained errors both in the pre-sentence report and the compass report related both to the nature and extent of his infractions while in prison and to the nature of a crime he was convicted of that was committed at the age of 15, specifically that it was consistently listed as an adult crime rather than a crime committed by a juvenile. This is not a claim for him to get out of prison. He is out of prison. It wasn't when he began this process. Is that correct? That is correct. Is there any remaining confusion on the record as to the nature of that early conviction? He pleads that there is, and the documents in the records, at least in two aspects, show that there is. With respect to the second or the most recent pre-sentence report, his crime committed at the age of 15 is still listed with the adult convictions. The title has changed from adult to adult court, but he pleads that that has continued to cause confusion and cause confusion while he was before the parole boards. But looking at the parole board records, they seem to understand in a way better than perhaps Mr. Amaker does exactly what the significance of that conviction is. Don't you think your stronger argument is as to the inclusion or not of the tier 3 violations? Well, I'm not sure I agree. I think that is a second argument. I'm not sure I agree that it's the stronger. Even the parole decision that released him, the most recent of them, actually gets his prior history wrong, calling it a Y.O. rather than a juvenile offense. So the record does clearly remain confused, and it took three adjournments to get to that result. And so on the paper before the board, and we'll get to what we seek here, which is both injunctive relief and damages, nominal or otherwise, clearly the paper record, which is what's going to follow him for the rest of his life, was confused enough that that very parole board that released him was confused when it released him and had been through hearings in the year 2015 that led to the multiple adjournments. Does the city contest the proper characterization of the earlier crime? In other words, are they insisting it was something other than a juvenile offense? I don't believe in their papers they contest that. I don't think the PSR adequately describes it as a juvenile crime. It lists it still under adult court. And so the reader, there's no way for you to know that, in fact, Mr. Amaker was 15 at the time, and although tried in an adult court, was a juvenile offender, which is quite different and is differently treated and should be by later parole boards. The order appointing us counsel asked us to brief a number of issues. Our learned opponents have raised a number of others. It's somewhat of almost a law school exam, this case. I'd like to focus on a couple of them, and I know the Court may ask them. I mean, could you focus on, I guess, what I think is the main event, which is whether or not there is a liberty interest in parole in New York? I think you've said in your brief that we've, this Court, has previously held in Barna that New York does not create any liberty interest in parole. Now, you ask us to revisit that, revisit Barna, in light of subsequent Supreme Court holdings, but if we hold that Barna is still good law, that's game over, isn't it? I don't believe Barna is still good law. I know you don't. I know you don't. And if you hold that, I don't believe that's game over. You don't believe it's game over. I do not. I do not. Well, he's not. I think Barna goes to the core. If we had, for example, he had, for example, lodged a claim against the parole board itself for an adequate due process, and he was actually seeking to get out of jail before the board and its discretion allowed him out. If I win on Barna, I win on that issue. If I don't win on Barna, there is still the due process experience, the lack of due process at the hands of the State in preparing the compass and at the City in preparing the PSR. Mr. Barna, in order for a State prisoner to have an interest in parole that is protected by the due process clause, he must have a legitimate expectancy of release that's grounded in the State's statutory scheme. And we've held that that's not the case, right? In Barna, you've clearly held that that's not the case. And we do think that Barna, when you read the Sandin case and the Wilkinson v. Austin cases, calls that seriously into question, and those arguments are there. But there's Graziano, which is after Wilkinson, that, again, cites Barna for the proposition that prisoners have no liberty interest in parole. And so, therefore, protections of the due process clause are inapplicable. Protections of the due process clause, I would submit, Your Honor, may be inapplicable under that line of cases as it relates to the actual right to get out of prison. I don't think they are inapplicable as to the process that Mr. Amaker or other prisoners might be put through as they go through it. And as the complaint pleads, he went through repeated, frustrating, difficult and unfair, and we submit violations of due process associated with the efforts. He doesn't have a right based on an expectancy of parole, but he does have a right to a parole hearing that is not frustrating? Well, he has a right to a hearing that conforms the due process clause, and he has a right to files, to papers within his folder, within his file, that are accurate. And I do submit that that's different than a due process right as to whether or not he gets out. It's what — and I also submit that this goes to damages, which is one of the two forms of relief he seeks. The second form of relief he seeks is an injunction requiring these documents to be fixed. Yes, Your Honor. What exactly would the injunction say, and why would he be entitled to it? He's out on parole. Well, he's out on parole but still subject for the rest of his life to review by the parole system, and he has periodic meetings. There are provisions under New York law where would he not want to be at some point subject to parole for the rest of his life. He could apply for a good conduct certificate. He could apply for a discretionary discharge of his sentence, and these documents will be considered. And the idea that if you paste together all the transcripts, all the everything, you can come to the accurate conclusion, and even if all of us here in the room can all agree that he was 15 at the time of the first offense, the documents should reflect it. The COMPAS report does not. We submit the PSR also does not, but the COMPAS report clearly does not. The wrong box is checked on that report. It's in his file. It's unchanged. But you're asking for two things, it sounds like. First, you're saying that he has a right or he had a right at the time of the parole hearings to have accurate or at least not inaccurate to a constitutional degree information in his files. And I understand that given that those events took place, but now you're saying that going forward he has a right to have an error-free or at least a reasonably error-free file for decisions that have not yet been made and applications he has not yet filed. There are certainly decisions that have not been made and there are certainly applications that have not been filed. The case law that the parties briefed focused on another way he could come before the probation system, which is that he commits another crime and then that's considered in terms of revoking his parole. We are not arguing. That, too, hasn't happened yet. And we are not arguing that. What we are arguing is that he has a statutory right to make the petitions that I've outlined and he should have a right. That is not his confinement, right? This is he's out. He's, frankly, a productive member of society today. He should have the right to an error-free file. I'm not saying every little thing, but a substantially error-free file so that his application is revoked when he makes these applications. And, no, there's no date for the hearing. He would have to make a decision to make the application. I grant that. But it's not something that's completely hypothetical. He's, I believe, about 55 years old. He will live the rest of his life under the control of this system unless he makes such applications. And even if he doesn't, he will periodically come before them and there will be different people, different people involved who will not know that the file is wrong. He has the right to a correct file. Let me ask you this. Do I hear you correctly that the certificate that he might seek in the future, the acquisition of it would be complicated by the errors on this? I can't see how it couldn't be for a future, you know, body to consider it that they are misunderstanding both the Tier 3 potentially, which is significant. The Tier 3 is the highest form. There were five of them that were expunged. Leaving how many, sir? I don't remember the answer. I don't know that there are any Tier 3s. I think he had lower offenses. It's in the record. I think he had a number of Tier 3s, and I actually think it worked in his benefit between 13 and 15 because they noted that between then he'd only had three, and those weren't expunged. But the five that were expunged, I'm not sure the five that were expunged worked in his benefit. Were they properly expunged, it would have lowered his rating. And just to get back to the offense that he committed when he was 15, that is incorrect on the compass form. I don't think there's any dispute about that. It's incorrect on the first page of it. All right. Mr. Young, you have reserved three minutes for rebuttal. Thank you. Mr. Mora for six minutes, right? Yes, Your Honor. May it please the Court. My name is Amit Mora, and I represent the State Appellees. Amaker's action suffers from several threshold defects. For one, now that he's been released, his claim for injunctive relief is moot. And this new allegation that supposed errors in his parole file might prejudice him one day in the future is speculative. Appointed counsel has referred to two statutory provisions, one for discretionary discharge, the other for the certificate of good conduct. But under the plain language of these provisions, he's not eligible for discretionary discharge until he's been on unprovoked community supervision for at least three consecutive years. He cannot even apply for a certificate of good conduct until he's exhibited a minimum period of good conduct of five years. So this 11th-hour basis for injunctive relief is equally deficient. There's also clear Let me ask you this. Will these Let's assume hypothetically these errors exist. Mr. Youngwood suggests that these would complicate his ability to get these, both of these forms of relief should he apply for them in the future. Would you agree with that? No, Your Honor. For discretionary discharge, that involves recommendations by the parole officers based on Amaker's conduct from when he was on parole until it would be three years later. There would be the parole file would still contain documents, including his PSIs and his conduct reports. But the discretionary discharge determination is based on his conduct during that period of time. What about the certificate? And the certificate, in the same sense, it's based on his period of good conduct for a period of five years. And the most important point, though, is that this is all speculative. This request for injunctive relief relies on speculative assumptions about his future conduct. Mr. Verra, do you No, I'm not sure it does. I mean, look, first of all, I'm not sure Help me understand why we've made a Federal case out of this. I mean, were there errors? And if so, why can't you both, as members of the, you know, officers of the court, agree to correct them? There are no errors. So there are two categories of errors, allegedly. What about the characterization of the crime committed when he was 15? The characterization of that crime is correct in the PSI and in the Compass report. When he was 15, he was adjudicated as a juvenile offender. Under New York law, juvenile offenders are a special category of minors who are treated and prosecuted in the adult criminal court system. That is clear. The law does provide that. In exceptional circumstances, a juvenile offender may be transferred from adult criminal court to family court. That mechanism That didn't happen. That did not happen. And Emeker doesn't even allege otherwise. He admits and concedes in his own complaint that he's a juvenile offender. Your position is that the nature of the offense is not mischaracterized in the records. Precisely, Your Honor. In the record at page 90, we have the current PSI. In this current PSI, his first homicide is listed under the adult court section. It states he's been adjudicated a juvenile offender for manslaughter, first degree. If we were to move that offense into the juvenile court section, we'd be inserting an error into the PSI. That didn't happen. Because that didn't happen. He was not transferred from adult court to family court. The mechanism for that used to be in CPL 210.43. Now it's in CPL 722.10. And the criminal court has discretion to transfer a case from adult court to juvenile court in the interest of justice, for example, if the minor were bullied or peer pressured into committing the offense. But none of that happened here. The COMPAS report is similarly accurate. Right now, the COMPAS report states that he has one prior adult court homicide arrest. And that's correct. Changing the answer from one to zero would be inserting an error into the COMPAS report. Now, about the disciplinary history, there's confusion here. Because I believe appointed counsel has misinterpreted its own client's allegations. Amaker alleges in his complaint that the COMPAS report has this prison misconduct score. And this prison misconduct score has improperly weighed these five expunged disciplinary tickets. And then in the reply brief, appointed counsel appears to suggest that this COMPAS report lists all of his disciplinary tickets, including his expunged ones, but a COMPAS report doesn't work that way. And Amaker knows that, too. Amaker knows better. Now, the problem is Amaker can't plausibly allege that the board relied on the five expunged tickets or an inflated prison misconduct score in denying him parole. And the chronology bears this out. When he was up for parole the first time in June 2013, the district court hadn't yet expunged his five tickets. But the court acknowledged, but the board, excuse me, acknowledged that he was challenging the five tickets in district court. And in denying him parole, the board made sure not to hold those tickets against him. Then in August 2013, the district court expunged those tickets. So when the board and Amaker reconvened in June 2015, the board said, all right, hold on, we want to make sure that these tickets are off your records completely. So we're going to delay this interview until July 2015. So then they reconvened again in July 2015. And the board, at the outset of the interview, asked Amaker, all right, are you okay now with our characterization, our understanding of your disciplinary history? And he said yes. He was satisfied and ready to proceed. That's at the record at page 211. But he wasn't satisfied with the characterization of the first homicide. And that's why the board had to once again delay the hearing until September 2015. So when we get to September 2015, the board fully understands, and there's no confusion regarding his disciplinary history or his criminal history. And only then did the board deny him parole. It waited until it was confident that it understood everything about his criminal and disciplinary history. It waited until it had the right information. So this chronology shows that the process worked favorably for Amaker. After each interview, the board gave him an opportunity to be heard. He aired his grievances. The board took those grievances seriously. It postponed it. The issue is, is there stuff in the file now that's inaccurate? There's nothing in the files now that is inaccurate. In addition, there's other threshold defects. There's collateral estoppel that bars his damages claim. His Article 78 petition is almost identical to his Federal complaint. In many places, the allegations are word for word the same. In fact, at page 162 of the record, the Article 78 petition does state that alleged that the Respondent violated due process. So there's a due process claim in his Article 78 petition. And the Article 78 court resolved the central allegation of his Federal complaint. At page 171 of the record, the Article 71 court held inaccuracy was not a factor in the board's denial of the Petitioner's application for parole. And then there's also the HECBAR. Although the Court has not yet decided whether those who are no longer in custody are subject to the HECBAR, we urge this Court to adopt a rule whereby former prisoners are subject to the HECBAR, but those who were never incarcerated and never in custody would not be subject to the HECBAR. And that's just with respect to damages, right? Yes, Your Honor. All right. Are there no further questions? Any other questions? No. All right. Thank you, Mr. Borah. We'll now hear from Ms. Paulson. Four minutes. Thank you, Your Honors. May it please the Court. Susan Paulson on behalf of the city of Appalachia. Your Honor, as my colleague just stated, there absolutely are no errors in the PSR report. The Mr. Amaker believed that the PSR report inaccurately categorized his first murder offense, but in fact, the PSR report always had a section that said previous court record. It doesn't just say previous criminal history. It's previous court record. And because he was convicted in adult court, it was correctly categorized. Nonetheless, he went to Supreme Court, filed an Article 78, and if you look at page 121 of the record, in the Article 78 decision, it directed the Department of Probation to amend the PSR report on page 2 to note that the first offense was as a juvenile offender. If you look in the record now, the amended PSR report, which was amended in 2012 before he was parole eligible and before his first parole hearing in 2013, says on page 2. And then again, if you look at the record on page 93 of the record, page 5 of the PSR, it twice says that he was a juvenile offender for that first offense. So there simply are no errors in the PSR report. But, I mean, this Court appointed Mr. Youngwood to explore this due process claim about whether there's a due process right to an error-free file, right? Correct, Your Honor. So the response that you're making is, well, never mind about that because the file is correct. Correct, Your Honor. There's no need to reach the question of whether or not there would be a due process violation. Was that true at the time of the appointment, too? Yes, Your Honor. It's our reading of the record that with the facts as pled, which incorporate here, incorporate by reference a number of documents that Mr. Amakar annexed to the complaint that the district court did consider, established that not only were there no errors, but the board did not rely on any false information in denying parole. As my colleague has quite a good amount of detail articulated to this Court, the parole board gave him every opportunity to consider the fact that, frankly, Mr. Amakar was confused about his PSR, but the parole board was not. But the parole board, in an excess of caution, continually went back to make sure that it understood that the first murder offense when he was 15 was correctly categorized as a juvenile offender. And it was. It was correctly categorized both in the PSR and in the Compass Report, which notes that he was age 15 at the time of his first offense, but also notes that it was an adult conviction. In addition, I would merely say that Mr. Amakar availed himself of all of the available mechanisms to safeguard the integrity of the process here. He filed an Article 78 proceeding and received relief that did change, amended the 89. He filed a grievance that was denied because of Compass Report correctly. He had hearings that were adjourned to check the status of both his prison disciplinary record as well as his previous court record. I think all that's clear. The issue is whether or not there are errors in the refile now that will haunt him or have concrete effects today. And there are not, Your Honor. And for that reason, this Court need not reach the issue of whether or not an individual would have a due process right to an error-free parole file because there are no facts that would support such a claim in this case. Roberts. Thank you, Ms. Paulson. Thank you. Okay. Mr. Youngwood, you've got three minutes. Thank you, Judge Sullivan. I'll start with the Compass Report itself. It's at Joint Appendix 204. The bottom of the page, Question 5, how many prior murder, voluntary manslaughter offenses as an adult? That's not what court were you tried in or what did the court system treat you as. It's arrests as an adult. He was arrested as a child. He was arrested as a 15-year-old. That is wrong. If nothing else comes out of this, there should be an order that that be fixed going forward so that anything that happens to this document going forward is correct. And it's not that we have to rely on three adjournments. Clearly, the records were confusing. There wouldn't have been three adjournments or three hearings, I should say. There are two adjournments. The notion that that's what he has to go through because there's some mistakes that are easy to fix mistakes. This is not a burden. That's what he has to go through when he next appears before the system. And he will appear before the system. There's no he's on parole. He regularly appears. And they have his file and they're looking at that Compass Report? I can't tell you that each and every one, but I believe they have access to it. And the I think counsel acknowledged that he will have the right after a certain amount of passage of time. In fact, that's the only basis by which he would not be permitted to apply. When was his parole date? When did he come out? He, I think, got actually was released in 2018, but I think it was by virtue of a hearing in 2017. It took some time afterwards. So he's been he's been in society. He lives in New York City since 2018. He would like to be a productive member of society going forward. And anyone who who will pass the time tests that these statutes require or these regulations require to make an application to perhaps someday not to have to be under supervision for the rest of their lives will make them. And these are the official documents. The people that were involved in the prior hearing are not going to be around at some point. The idea of sorry. No, I I think that is the primary error. I think to be direct, the PSR is closer to accurate. There was an original PSR. There was a proceeding where the city was ordered to change that PSR. They changed it by at the top of the page that it originally said like court proceedings, and they moved the word court to after the words adult and juvenile, putting all of them still under adult. And they did add a parenthetical referencing juvenile. It's still, I think, confusing. I don't think it should be referenced at all under adult, but you can read it and have ambiguity. I would say the ambiguity should be fixed. The compass, there's no ambiguity. It's just wrong. I'm sorry. Give me the reference. Yes, I will. So the compass or the PSR? Both. So the compass is JA204. And the other? And the original PSR from 1979, I'm sorry, no, 1989. Thank you. JA78, that is ordered corrected, and the corrected one is JA90 that lists the first conviction under adult court. It does have a column that references juvenile. That is the less troubling of the two, although I do think it's ambiguous where it is. You're really focused on question five, how many prior murder-slash-voluntary manslaughter offense arrests as an adult. Yes. And the answer is zero, but it says one. It seems to me what you're really arguing is not that the information is wrong, but that the question is vague. I don't think the question is vague, Your Honor. I mean, if it's an arrest as an adult, in other words, treated as an adult in the system as opposed to a juvenile court or a family court, that does seem to me your objection is to the question, right? My position is any reason that that's likely to be read to ask whether this was an adult arrest. Again, I know ambiguity, English language is imprecise, but this to me says quite clearly arrests as an adult. He was 15. The act of the arrest was not as an adult. I mean, he was 15 years old. It's describing the arrest. It's how many murder-slash-voluntary manslaughter offense arrests, right? And so I think that could be construed as how many times was he arrested for a charge that resulted him in going into the adult system as opposed to the juvenile system? It's maybe not a model of clarity, but it does seem to me that the objection is to the question, and that's maybe a different issue. Your Honor, I would submit that whether it's to the question or to the answer taken together, it creates the wrong impression. So you're saying he also has a constitutional right to unambiguous questions on the compass form so that the answers couldn't be misconstrued? Your Honor, I think he has a right to a correct file, and the question read with the answer is incorrect. I submit there's no ambiguity in the question as to when the time of the arrest is. You read it differently, so I will say that even if there is ambiguity, then he has a right to a file that doesn't lead some readers to believe, I would say almost all, that he had one arrest as an adult for a manslaughter or a murder. He didn't. But available to the people who have this file is also other documentation that shows what he was arrested for and when, right? It might be available to them if they pulled the right files, but this is plainly incorrect on the face of it. And it caused the confusion that led to three hearings. So it is clearly something subject to different I think it caused confusion on the part of your client more than the parole board. They delayed things to make sure that they weren't making a mistake. But it's not clear to me that there's much likelihood that anybody down the road, parole officers or anyone else, are going to be confused by this. Your Honor, I would submit that's a jury question if it comes to it. But I also would submit that they were confused. If you look at the joint appendix at page 112, they end up noting this. This is actually when he actually gets out. They end up noting that his first offense, they call it a Y.O. It wasn't a Y.O. That's different. They didn't even read the records correctly when they let him out. Who has the ability to correct them? To correct them? I believe the state can correct the compass. I believe the city can correct the PSR. And we've, you know, he chose the defendants, the individuals. But I believe the individuals that he's named, we have not seen an argument that we sued the wrong people. Thank you. Thank you, Mr. Youngwood. Thank you all. It was very well argued. We'll reserve decision. And, Mr. Youngwood, thank you. You're doing this on a pro bono basis. Yeah. Yeah. So we're grateful for that. Thank you. And thanks, Simpson and Thatcher, for taking this on. Okay.